**UNITED STATES of America,**
**Plaintiff,**

v.

**BECTON, DICKINSON & COMPANY,**
**Defendant.**

**Civ. A. No. 567–60.**

United States District Court
D. New Jersey.

Nov. 26, 1962.

See also 30 F.R.D. 132.

Charles L. Beckler, Charles H. McEnerney, Jr., Attys., Dept. of Justice, for plaintiff.

Toner, Crowley, Woelper & Vanderbilt, Newark, N. J., H. Allen Lochner, David S. Kane, New York City, for defendant; by Willard G. Woelper, Newark, N. J.

WORTENDYKE, District Judge.

This is a Government civil antitrust action based upon alleged violations of Sections 1 and 2 of the Sherman Act.

The plaintiff noticed a motion, returnable on November 13, 1962, under the provisions of Rule 37(b) of the Federal Rules of Civil Procedure, seeking an order requiring the defendant to comply with an order of this Court dated April 30, 1962, and for such other and further relief provided for under the cited Rule, as this Court may deem appropriate.

The order of April 30 required Becton, Dickinson & Co. (hereinafter referred to as B–D) to produce certain documents, including copies of all reports furnished by the defendant to the United States Department of Commerce, Bureau of the Census relating to hypodermic syringes, for each year from January 1, 1947 to June 28, 1960, inclusive. By the terms of the order to produce defendant was given until not later than May 1, 1962 to comply therewith. The motion was orally argued upon the return day of its notice and decision was reserved thereon, with leave granted to the plaintiff to file opposing affidavits within the then next succeeding ten days.

The order in question was consented to by both parties, and was *not* merely the formalization of an earlier directive of the Court. As with all "consent orders," it is admitted, by definition, that the signatories to the order have adjusted their differences to the extent of the content of the order, and the signature of the Judge is merely the catalyst that permanently binds the agreement. Defendant asserts that because it merely consented to the *form* of the order, and because the word "substance" does not appear on the face of the document, it did not commit itself to compliance therewith. This argument is not viewed with favor. When litigants agree to adjust their differences in the manner described, one may not subsequently be heard to deny the effect of his act.

The order to produce specifically stated: "That the defendant shall produce and make available to the plaintiff for inspection, copying or photographing * * * each and every document in its possession, custody or control, which is embraced within the following numbered items of plaintiff's letter of February 2, 1962 mentioned hereinbefore: * * *

"4. Copies of all reports furnished by B–D to the United States Department of Commerce, Bureau of the Census, relating to hypodermic syringes, for each year from January 1, 1947 to June 28, 1960, inclusive."

Prior to the entry of the order, the parties exchanged correspondence looking toward possible agreement for the production of documents, and to obviate the necessity for application to the Court. Copies of some of this correspondence were sent to me. They include a letter from Government counsel to Mr. Woelper, counsel for B–D, acknowledging receipt of a letter from the latter indicating that he would not object to an order requiring production of the census reports. The actual letter expressing such intention is not before me. After the consent order was entered, apparently no discussion was had between counsel relative to the production of the census reports until September, when Mr. Beckler (Government counsel) requested B–D's counsel to comply with the terms of the order of April 30, 1962.

Upon oral argument B–D contends that it need only produce "each and every document in its possession, custody or control", and that it does not have the original, or any copy of any of the reports. Although it might be possible to write the Census Bureau and obtain a copy, B–D argues that no obligation exists for it to do so. The Government insists that B–D is required to pursue this possible course of action if it is unable to find the material in its own files.

The words of the order "possession, custody or control" are the same as are found in the Rule. In Reeves v. Pennsylvania Railway Co., D.C., 80 F.Supp. 107, the Court required a taxpayer to produce his income tax returns, even though he had not retained a copy thereof, and he was required to secure a copy from the Internal Revenue Service in order to comply. At p. 109, the Court said: "I am of the opinion that the taxpayer retains such a potential right to the custody or control of the copies as to require production of such copies. The potential right to the custody and control of the copies may be converted into an actual custody and control solely upon the exercise of the option of the taxpayer." The Court recognized "that the taxpayer alone has the right to inspect filed returns and obtain copies thereof." In the case at bar the plaintiff would have no right to apply to the Census Bureau for the documents it seeks to have defendant produce. Adopting the rationale of the Reeves case, it would seem that defendant may not appropriately avail itself of the argument that the census reports are not within its custody or control.

One of the charges made by the Government against the defendant in this case is that of conspiracy to acquire, or possession of a monopoly of the market for certain products, particularly hypodermic syringes, in interstate commerce. The complaint originally charged that B–D was the largest manufacturer of hypodermic syringes in the world. B–D initially admitted this allegation in its answer. Subsequently it made application to amend the answer to the extent of *denying* that it was the largest manufacturer of such products in the world, and leave was accordingly granted.

The Government's interest in securing the documents in question apparently is to establish the fact of defendant's size. On April 30, 1962, when plaintiff secured the order to produce, § 9(a) of 13 U.S. C.A. prohibited the use of census information given to the Department of Commerce for any purpose other than statistical, and its disclosure to any one other than sworn officers and employees of the Department. This section was interpreted by the Supreme Court in St. Regis Paper Co. v. United States, 368 U.S. 208, 82 S.Ct. 289, 7 L.Ed.2d 240 (1961) wherein the Court, recognizing that no one other than sworn officers and employees had a right to examine the reports filed, nevertheless held that copies of census reports not held by the Census Bureau may be secured by legal process. The Court stated, at p. 218, 82 S.Ct. at p. 295: "We fully realize the importance to the public of the submission of free and full reports to the Census Bureau, but we cannot rewrite the Census Act. It does not require petitioner to keep a copy of its report nor does it grant copies of the report not in the hands of the Census Bureau an immunity from legal process. Ours is the duty to avoid a construction that would suppress otherwise competent evidence unless the statute, strictly construed, requires such a result. That this statute does not do." It seems clear that the order to produce, when entered, was in conformity with the opinion enunciated in St. Regis. It is equally clear that the order was enforcible until October of 1962, when Section 9(a) of the Act was amended by adding thereto a provision that no representative of the Government, except the Secretary of Commerce, in carrying out his duties under the Act, shall require, for *any reason*, copies of census reports which have been retained by a person or corporation which has made the report. (Emphasis supplied.) Assuming that B–D

could have obtained copies of its census reports within the time directed by this Court's order, and recognizing that B–D failed to do so, the question which confronts me is whether, upon the application of counsel for the Government in this antitrust action, made not only *after* B–D became in default under the order, but also *after* the taking effect of the amendment to the Act, I should require B–D to procure from the Bureau of the Census and turn over to the counsel for the Government a copy or copies of B–D's census reports.

■ It is my view that if we construe the amendment to the Act as prospective in operation, it nevertheless effectively precludes the enforcement of this Court's order insofar as it directed B–D to turn over copies of its census reports to counsel for the Government. The Act refers to reports which *HAVE* been made and *ARE* in the possession of the Secretary, and it expressly forbids the compulsion by any judicial process of disclosure of the contents of the reports. The order of this Court is a form of judicial process. This Court was created by Act of Congress. Its jurisdiction is prescribed and limited by Act of Congress, and in my opinion, Congress has the power to modify and limit the jurisdiction of this Court, even to the extent suggested by my interpretation of the amendment to the Act.

Furthermore, the amendment provides that "copies of census reports * * * shall not, without the consent of the individual or establishment concerned, be admitted as evidence or used for *any purpose* in any action, suit, or other judicial or administrative proceeding." (Emphasis supplied.) Clearly, if received now, any contemplated use of the documents by plaintiff would be precluded by the above quoted sentence, and such foreclosure by the amendment could not conceivably be considered to be a retrospective application. Therefore, it makes little sense to enforce compliance with an order where any possible use to which the documents were susceptible has been precluded by Congress. It is true that discovery is not limited to matters which may be evidentiary. However, even considering the breadth of the scope of discovery under the Federal Rules, this Court cannot envision any other possible advantage to be gained from the use of the documents referred to.

I conclude, therefore, that the motion of the Government to compel B–D to comply with this Court's order, or in the alternative to impose a penalty upon B–D, must be denied.

An order in accordance with this opinion may be submitted.